UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FRANK PARKER,

    Petitioner,                              Case No. 08-CV-11648

v.

                                            HON. AVERN COHN

GREG McQUIGGIN,

    Respondent.
_____/

**MEMORANDUM AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY**

## I. Introduction

This is a habeas case under 28 U.S.C. § 2254. Petitioner Frank Parker is a state inmate confined at the Newberry Correctional Facility, where he is serving a life sentence plus two years for first-degree murder, MICH. COMP. LAWS 750.316, and commission of a felony with a firearm. MICH. COMP. LAWS 750.220b. Petitioner has filed a pro se petition for writ of habeas corpus claiming that he is incarcerated in violation of his constitutional rights. Respondent, through the Michigan Attorney General's Office, filed a response, arguing that Petitioner's claims are procedurally defaulted or without merit. For the reasons which follow, the petition will be denied.

## II. Procedural History

Petitioner was convicted of the above offenses following a jury trial in the Wayne Circuit Court. Petitioner filed an appeal of right with the Michigan Court of Appeals, in which he was represented by the State Appellate Defender Office. Petitioner's appellate counsel raised what now forms Petitioner's first and second habeas claims.

The Michigan Court of Appeals affirmed Petitioner's conviction. People v. Parker, No. 245093 (Mich.Ct.App. Sept. 21, 2004). Petitioner then filed an application for leave to appeal in the Michigan Supreme Court raising the same claims. The Michigan Supreme Court denied leave to appeal. People v. Parker, 472 Mich. 894 (2005) (TABLE).

Petitioner then filed a post-conviction motion for relief from judgment under to MICH. CT. R. 6.500, et. seq., in which he presented what are now listed as claims three through eight in the current petition. The trial court denied the motion, citing MICH. CT. R. 6.508(D)(3). People v. Parker, No. 01-1619-01 (Wayne Circuit Court, November 3, 2006). The Michigan appellate courts denied Petitioner leave to appeal, finding that he had failed to establish entitlement to relief under MICH. CT. R. 6.508(D). People v. Parker, No. 281702 (Mich. Ct. App. Feb. 5, 2005); People v. Parker, No. 136031 (Mich. Sup. Ct. Sept. 9, 2008).

Petitioner has now filed a petition for writ of habeas corpus, raising the following claims:

> I. Petitioner was denied his due process rights to a fair and impartial trial when the prosecutor appealed to the jurors' fears by interjecting appeals to civic duty during her closing and rebuttal arguments.
>
> II. Petitioner was denied a fair and impartial trial when the trial court failed to grant the deliberating jury's request to review the testimony of the two principal witnesses.
>
> III. Petitioner was denied due process of law when the prosecution failed to present sufficient evidence to convince a rational trier of fact of Petitioner's guilt beyond a reasonable doubt.
>
> IV. Petitioner was denied due process of law and a fair trial and the right to confrontation where the medical examiner was allowed to testify to autopsy results of which he did not
> perform the actual autopsy nor participate in any manner.

V. Petitioner was denied due process of law and a fair trial when other acts evidence was improperly introduced during his trial.

VI. Petitioner was denied the effective assistance of counsel when defense counsel failed to object to repeated instances of prosecutorial misconduct, interfered with Petitioner's right to testify, and failing to object to the admission of hearsay evidence denying Petitioner his right to confrontation.

VII. Petitioner was denied his constitutional right to a fair trial due to the cumulative effect of the prejudicial errors which occurred during the course of his trial.

VIII. Petitioner was deprived of the effective assistance of counsel on direct appeal when appellate counsel failed, after reading the record, to raise issues that were both "obvious and significant" for no apparent strategic purpose.

### III.  Facts

This case arises from the murder of Elizabeth Webb, who was shot in the head at her home during the night of November 17, 2000.  The prosecutor's theory at trial was that Webb's daughter, Antoinette Webb Terrell, hired Petitioner to kill her mother.  Prior to Petitioner's trial, Antoinette pled guilty to second-degree murder in exchange for her testimony against Petitioner.

Antoinette testified at trial that in the Summer of 2000 her husband, Leroy Terrell, was murdered at their home.  Antoinette's brother was charged with the murder. When Antoinette visited her brother in jail, she learned that her mother had an affair with her deceased husband.  She later learned from her sister-in-law that her mother was involved in the murder and the motive was her husband's failure to pay her mother for sex.  At that point, Antoinette resolved to kill her mother.

Antoinette called Petitioner, who knew both Antoinette and her mother.  She

drove to meet Petitioner with her cousin Eugene Smith, and asked Petitioner if he was willing to perform a hit for $20,000. Petitioner agreed to perform the hit. Antoinette paid him $10,000 in cash she had earned from drug dealing, and she promised to pay him the remaining $10,000 after the job was complete with proceeds from her mother's life insurance policy.

On the day of the murder, Petitioner called Antoinette to ask her how he should get inside Webb's house. Antoinette simply called her mother and told her to let Petitioner in when he arrived and that she would be over later. Then, in the early morning hours of November 18, 2000, Petitioner called Antoinette at her boyfriend's house. He told Antoinette that the job was done, and asked about payment. Antoinette felt sick.

Later that morning, Antoinette called her cousin Delano Smith, and asked him to go over to her mother's house. Delano called-back after a period of time and told Antoinette that her mother was not answering her phones, the doors were locked, and her car was in the driveway. Antoinette then went to the house and met Delano with her boyfriend, Mike Smith. She discovered that the back door was ajar, and told Delano and her boyfriend to go inside. Soon thereafter, Delano ran out of the house and told Antoinette that her mother was dead. The police were called, and the three waited for them to arrive.

A pathologist testified that the victim had been shot at close range in front of the right ear. The victim was found lying on her back with her legs bent underneath, and the sharply downward angle of the wound suggested that she was kneeling when she was shot. A 9mm bullet was recovered from the victim. The victim also had massive

4

internal injuries.

Antoinette was questioned later that day at the police station. She eventually admitted that she had solicited Petitioner to kill her mother. The police instructed her to call Petitioner. She called him to tell him that she had the rest of his money and would be right over. Instead, the police went and arrested Petitioner.

Petitioner and Antoinette were charged with murder and scheduled to go to trial. As noted above, Antoinette plead guilty to second-degree murder, but was allowed to withdraw her plea after she received three letters from Petitioner that if she testified against him "her family would feel it." On the eve of trial, Antoinette was allowed to take the same deal and agreed to testify against Petitioner.

Antoinette's testimony was corroborated by the other witnesses who testified for the prosecution. Delano Smith described how when he met Antoinette at her mother's house, she was reluctant to go inside. Antoinette's boyfriend led the way, and when he discovered the body, Antoinette ran screaming from the house and vomited.

Eugene Smith testified that he was the victim's nephew and that he knew Petitioner, whose brother was married to his sister. Smith used to live with Antoinette until her husband died, and then he moved into Petitioner's father's house. He testified that he and Petitioner were as close as brothers.

Smith recalled the meeting with Antoinette and Petitioner where she asked if Petitioner would perform a hit for her. The day after the murder, Petitioner told Smith that when Antoinette had hired him to kill someone, it was Smith's aunt. Petitioner described how Antoinette got him into the victim's house. He said that he slapped the victim in the face and then shot her in the head with his 9mm handgun. Petitioner said

that he was given cash and marijuana, and that when the victim's insurance proceeds were received he would be paid $20,000. Petitioner told Smith that if Antoinette ever told anyone, he would kill her, her kids, and Smith. The next day, Smith learned from his sister that his aunt had indeed been killed.

Smith further testified that on November 21st he was at Petitioner's father's house with Petitioner when Antoinette called. When Petitioner got off of the phone, he told Smith that Antoinette was on her way over to pay him. Petitioner jumped around and exclaimed that he was going to get his money. The police arrived shortly after and arrested Petitioner and Smith. At the police station, Smith told the police that Antoinette hired Petitioner to kill someone, and that Petitioner told Smith that he had done it.

Based on this evidence, the jury found Petitioner guilty of first-degree murder and felony-firearm. He was subsequently sentenced as indicated above.

## IV. Analysis

### A. Standard of Review

Review of this case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Under the AEDPA, Petitioner is entitled to a writ of habeas corpus only if he can show that the state court's adjudication of his claims on the merits-

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Simply stated, under section 2254(d), Petitioner must show that the state court's decision "was either contrary to, or an unreasonable application of, [the

6

Supreme] Court's clearly established precedents, or was based upon an unreasonable determination of the facts."  Price v. Vincent, 538 U.S. 634, 639 (2003).

A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts."  Williams v. Taylor, 529 U.S. 362, 412-13 (2000).  A state court's decision is an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  Id. at 413.  A state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding, § 2254(d)(2)."  Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

### B.  Claim I - Prosecutorial Misconduct

Petitioner first asserts that the prosecutor committed misconduct during closing arguments.  Specifically, Petitioner claims that the prosecutor appealed to the jurors' sense of civic duty as the reason for finding Petitioner guilty rather than the evidence presented at trial.  Respondent says this claim lacks merit.

The Supreme Court has stated that prosecutors must "refrain from improper methods calculated to produce a wrongful conviction."  Berger v. United States, 295 U.S. 78, 88 (1935).  When a petitioner seeking habeas relief makes a claim of prosecutorial misconduct, the reviewing court must consider that the touchstone of due

7

process is the fairness of the trial, not the culpability of the prosecutor. On habeas review, a court's role is to determine whether the conduct was so egregious as to render the entire trial fundamentally unfair. Serra v. Michigan Department of Corrections, 4 F. 3d 1348, 1355-1356 (6th Cir. 1993). When analyzing a claim of prosecutorial misconduct, a court must initially decide whether the challenged statements were improper. Boyle v. Million, 201 F. 3d 711, 717 (6th Cir. 2000). If the conduct is improper, the district court must then examine whether the statements or remarks are so flagrant as to constitute a denial of due process and warrant granting a writ. Id. In evaluating prosecutorial misconduct in a habeas case, consideration should be given to the degree to which the challenged remarks had a tendency to mislead the jury and to prejudice the accused, whether they were isolated or extensive, whether they were deliberately or accidentally placed before the jury, and, except in the sentencing phase of a capital murder case, the strength of the competent proof against the accused. Serra, 4 F. 3d at 1355-56; See also Simpson v. Warren, 662 F. Supp. 2d 835, 853 (E.D. Mich. 2009).

Here, the Michigan Court of Appeals, in a thorough-going analysis, found that none of the comments challenged by Petitioner were improper. See slip op. at p. 1-3.

This decision is neither contrary to Supreme Court precedent nor an unreasonable application thereof. Petitioner first challenges the prosecutor's remark that "we as a society and I as a prosecuting attorney have an interest in holding a killer, in holding a 19-year-old killer accountable. . . ." Trial Tr. VIII, at 24. The remark cannot be read in isolation but must be viewed in the context in which it was given. *United States v. Beverly*, 369 F.3d 516, 543 (6th Cir. 2005). The challenged remark was made

in conjunction with the prosecutor stating that "The only issue you must decide is if Ms. Elizabeth Webb was killed, first of all, and did Frank Parker kill her. That is the only issue for you to decide." Id. at 23. The prosecutor's remark aimed to direct the jury's attention to Petitioner's role in the murder and away from Antoinette's obvious culpability because her guilt was not an issue before them.

Petitioner says that the remark was improper because it appealed to the jury's sense of civic duty rather than the evidence. A civic duty argument is one which "encourages the jury to convict the defendant based upon principles of protection of the community and encourages them to ignore the evidence in the case." United States v. Mejorado-Soto, 1995 U.S. App. LEXIS 39942 (6th Cir. Dec. 27, 1995)(per curiam). The challenged remark was not designed to direct the jury away from the evidence. Rather, read in context, the prosecutor was explaining to the jury why she had to rely upon the testimony of a person who was as guilty as Petitioner and why she had to offer that person a reduced plea agreement in exchange for her testimony. The prosecutor's point was that although Antoinette Webb was just as guilty as Petitioner, the interests of society required that a deal be struck for her testimony to see that the other guilty party did not go free. The comment was not improper and the Michigan Court of Appeals's similar conclusion was reasonable.

Petitioner also asserts that the prosecutor's rhetorical question "Do we not have an interest?" amounted to a civic duty argument. Again, the full context of the remarks must be considered: "But, ladies and gentlemen, ask yourself again, the focus or the interest in somebody who would be willing to do as he did for money. Do we not have an interest? He doesn't get away with murder because you don't like something about

Antoinette Webb. Keep that as your focus." Id. at 50-51. In context, the reference to an "interest" refers to the fact that the prosecutor was willing to make a deal with Antoinette in order to build its case against Petitioner. Although comparing Petitioner's financial interest for committing the murder to the prosecutor's interest in making a deal for Antoinette's testimony is a non sequitur, it did not amount to an improper argument that asked the jury to find Petitioner guilty based on something other than the evidence.

Petitioner next asserts that the prosecutor unfairly invoked sympathy for the victim and for victims of murders in general by stating, "Who speaks for the dead, ladies and gentlemen? You do. Please do your job." Id. at 78. This isolated remark falls far below the threshold required for demonstrating entitlement to habeas relief. In United States v. Young, 470 U.S. 1, 18 (1985), the United States Supreme Court found that the prosecutor was "in error to try to exhort the jury to 'do its job'; that kind of pressure, whether by the prosecutor or defense counsel, has no place in the administration of criminal justice." The Court held, however, that this comment was not sufficiently prejudicial to undermine the fundamental fairness of the trial. Here too, this brief closing remark to the prosecutor's rebuttal argument did not render Petitioner's trial fundamentally unfair. The Michigan Court of Appeals conclusion Petitioner was not entitled to relief on his prosecutorial misconduct claim was reasonable and not contrary to Supreme Court precedent. As such, Petitioner has not demonstrated entitlement to relief based on his first claim.

### C. Claim II - Failure to Read Testimony to Jury

Petitioner's second claim asserts that that the trial court erroneously refused to re-read trial testimony at the request of the jury. Respondent says that the claim is

procedurally defaulted because the Michigan Court of Appeals found that Petitioner had waived any error by acquiescing in the trial court's handling of the jury's request.

Assuming the claim had not been waived, it would not provide a basis for granting habeas relief. There is no federal constitutional law which requires that a jury be provided with a witness's testimony. See Bradley v. Birkett, 192 Fed.Appx. 468, 477 (6th Cir. 2006). The reason for this is that there is no United States Supreme Court decision that requires judges to re-read testimony of witnesses or to provide transcripts of their testimony to jurors upon their request. See Friday v. Straub, 175 F. Supp. 2d 933, 939 (E.D. Mich. 2001). A habeas petitioner's claim that a state trial court violated his right to a fair trial by refusing to grant a jury request for transcripts is therefore not cognizable in a habeas proceeding. Bradley, 192 Fed. Appx. at 477; Spalla v. Foltz, 615 F. Supp. 224, 233-34 (E.D. Mich. 1985). As such, Petitioner is not entitled to habeas relief on this claim.

### D. Claims III - VIII - Raised in Petitioner's Motion for Relief from Judgment

Respondent contends that Petitioner's third through eighth claims are procedurally defaulted because they were raised for the first time in his post-conviction motion, and he failed to show cause and prejudice for failing to raise these claims in his appeal of right, as required by MICH. CT. R. 6.508(D)(3). The Court agrees.

Federal habeas relief may be precluded on claims that a petitioner has not presented to the state courts in accordance with the state's procedural rules. See Wainwright v. Sykes, 433 U.S. 72, 85-87 (1977). Procedural default precluding a state prisoner from seeking federal habeas relief may occur if the state prisoner files an untimely appeal, if he fails to present an issue to the state appellate court at his only

opportunity to do so, or if he fails to comply with a state procedural rule that required him to have done something at trial to preserve his claimed error for appellate review. See Matson v. Michigan Parole Bd., 175 F. Supp. 2d 925, 927 (E.D. Mich. 2001)(internal citations omitted). A state prisoner who fails to comply with a state's procedural rules waives the right to federal habeas review absent a showing of cause for noncompliance and actual prejudice resulting from the alleged constitutional violation, or a showing of a fundamental miscarriage of justice. See Coleman v. Thompson, 501 U.S. 722, 750 (1991). In Murray v. Carrier, 477 U.S. 478, 488 (1986), the Supreme Court defined cause sufficient to excuse procedural default as "some objective factor external to the defense," which precludes a habeas petitioner's ability to pursue his claim in state court.

Michigan Court Rule 6.508(D)(3) provides that a court may not grant relief to a defendant if the motion for relief from judgment alleges grounds for relief which could have been raised on direct appeal, absent a showing of good cause for the failure to raise such grounds previously and actual prejudice resulting therefrom. For purposes of a conviction following a trial, "actual prejudice" means that "but for the alleged error, the defendant would have had a reasonably likely chance of acquittal." MICH. CT. R. 6.508(D)(3)(b)(i).

In this case, both the Michigan Court of Appeals and Michigan Supreme Court denied relief with respect to these claims by issuing form orders citing to Petitioner's "failure to demonstrate entitlement to relief under MICH. CT. R. 6.508(d)." The Court of Appeals for the Sixth Circuit has recently held that these form orders used by the Michigan appellate courts are unexplained because they are ambiguous as to whether

they refer to a procedural default or the denial of right on the merits. Guilmette v. Howes, ___ F.3d ___; 2010 U.S. App. LEXIS 21682 (6th Cir. Oct. 21, 2010)(en banc). Under Guilmette, the Court must "look through" the unexplained orders of the Michigan appellate courts to the decision of the state trial court to determine the basis for the denial of state post-conviction relief.

Here, the trial court explicitly mentioned MICH. CT. R. 6.508(D)(3) and went on to note that "pursuant to Mich. Ct. R. 6.508(d)(3)(b), defendant has failed to establish good cause and actual prejudice that supports his claim." People v. Parker, No. 01-1619-01, at *3 (Wayne Circuit Court, November 3, 2006). Under these circumstances, Petitioner's post-conviction claims are procedurally defaulted pursuant to Mich. Ct. R. 6.508(D)(3). The fact that the trial court may have briefly discussed the merits of petitioner's claims after invoking the provisions of MICH. CT. R. 6.508(D)(3) to reject petitioner's claims does not alter this analysis. See Alvarez v. Straub, 64 F. Supp. 2d 686, 695 (E.D. Mich. 1999). Accordingly, Petitioner's third through eighth claims are therefore procedurally defaulted.

Petitioner alleges ineffective assistance of appellate counsel as cause to excuse his procedural default. Petitioner, however, has not shown that appellate counsel was ineffective. It is well-established that a criminal defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. See Jones v. Barnes, 463 U.S. 745, 751 (1983). The Supreme Court has subsequently noted that:

> Notwithstanding Barnes, it is still possible to bring a Strickland claim based on [appellate] counsel's failure to raise a particular claim[on appeal], but it is difficult to demonstrate that counsel was incompetent."

Smith v. Robbins, 528 U.S. 259, 288 (2000).

Petitioner has failed to show that appellate counsel's performance fell outside the wide range of professionally competent assistance by omitting his third through eighth claims. Petitioner was represented by an assistant defender from the State Appellate Defender Office, who filed a well-drafted brief, in which she raised two substantial claims. Petitioner has not shown that appellate counsel's strategy in presenting these claims and not raising other claims was deficient or unreasonable. Moreover, for the reasons stated by the Michigan Attorney General in their answer to the petition for writ of habeas corpus, none of the claims raised by petitioner in his post-conviction motion have merit. Briefly stated, the evidence, outlined above, was sufficient to convict Petitioner as charged. Indeed, the evidence of Petitioner's guilt was overwhelming. There was also no error in the admission of the medical examiner's testimony or other acts evidence. As such, Petitioner has failed to establish cause for his procedural default of failing to raise these claims on direct review.

Moreover, Petitioner is unable to show that he was prejudiced by his appellate counsel's failure to raise these claims on his appeal of right, in light of the fact that these same claims were presented to the Michigan trial and appellate courts on petitioner's post-conviction motion for relief from judgment and they were rejected by them. See Hollin v. Sowders, 710 F. 2d 264, 265-67 (6th Cir. 1983); Bair v. Phillips, 106 F. Supp. 2d 934, 938, 943 (E.D. Mich. 2000). The state courts' rulings on Petitioner's motion for post-conviction relief granted Petitioner an adequate substitute for direct appellate review and therefore his attorney's failure to raise his second through eighth claims during Petitioner's appeal of right did not cause him actual prejudice. *Bair,* 106 F. Supp.

14

2d at 943.

Because Petitioner has not demonstrated any cause for his procedural default, it is unnecessary for this Court to reach the prejudice issue. Smith v. Murray, 477 U.S. at 533. Additionally, Petitioner has not established that a fundamental miscarriage of justice has occurred. The miscarriage of justice exception requires a showing that a constitutional violation probably resulted in the conviction of one who is actually innocent. Schlup v. Delo, 513 U.S. 298, 326-27 (1995). "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." Bousley v. United States, 523 U.S. 614, 624 (1998). "To be credible, [a claim of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence - whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence - that was not presented at trial." Schlup, 513 U.S. at 324. Because Petitioner has not presented any new reliable evidence that he is innocent of this crime, a miscarriage of justice will not occur if the Court declined to review his first through fourth and tenth claims on the merits.

In short, Petitioner's second through eighth claims are barred by procedural default.

## V. Conclusion

For the reasons stated above, the state courts' rejection of Petitioner's claims did not result in decisions that were contrary to Supreme Court precedent, an unreasonable application of Supreme Court precedent, or an unreasonable determination of the facts. Accordingly, the petition for a writ of habeas corpus is DENIED.

Furthermore, reasonable jurists would not debate the Court's assessment of

Petitioner's claims, nor conclude that the issues deserve encouragement to proceed further. The Court therefore DECLINES to grant a certificate of appealability under 28 U.S.C. § 2253(c)(2).[1]  See Slack v. McDaniel, 529 U.S. 473, 484 (2000). However, if Petitioner chooses to appeal the Court's decision, he may proceed in forma pauperis on appeal because an appeal could be taken in good faith. 28 U.S.C. § 1915(a)(3).

This case is DISMISSED.

SO ORDERED.


Dated: December 16, 2010          s/Avern Cohn
                                  AVERN COHN
                                  UNITED STATES DISTRICT JUDGE


I hereby certify that a copy of the foregoing document was mailed to Frank Parker, 315502, Newberry Correctional Facility, 3001 Newberry Avenue, Newberry, MI 49868 and the attorneys of record on this date, December 16, 2010, by electronic and/or ordinary mail.

                                   s/Julie Owens
                                  Case Manager, (313) 234-5160

---

[1] "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.